IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARTHA J. NICE; CAMERON E. NICE,<br><br>Plaintiffs,<br><br>v.<br><br>ANNE E. LOPEZ, ET AL.,<br><br>Defendants. | CIV. NO. 25-00029 JMS-RT<br><br>ORDER DISMISSING COMPLAINT, ECF NO. 1 |

### ORDER DISMISSING COMPLAINT, ECF NO. 1

### I. INTRODUCTION

On January 24, 2025, Martha J. Nice and Cameron E. Nice ("Plaintiffs" or "the Nices") filed a pro se Complaint pursuant to 42 U.S.C. § 1983. ECF No. 1.  Plaintiffs allege that several State of Hawaii Offices, the State of Hawaii Fifth Circuit Court, and the Kauai County Office of the Prosecuting Attorney violated their due process rights under the Fifth and Fourteenth Amendments.  *Id*.  On that same date, Plaintiffs also filed an Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application"), ECF No. 2, which the court granted in part and denied in part.  ECF No. 8.  The court ordered Plaintiffs to pay a partial filing fee of $150, which they have.  *See* ECF No. 9.  Accordingly, the court proceeds to screen the Complaint under 28

U.S.C. § 1915(a)(1).  For the following reasons, the court ORDERS Plaintiffs to SHOW CAUSE in writing why the Complaint should not be dismissed.

## II.  BACKGROUND

Two underlying state court actions appear to form the basis for this matter.[1]  First, in April 2022, the Nices were sued for their alleged breach of a purchase contract for real property they owned.  *See Mark Malagodi, et al. v. Cameron E. Nice, et al.*, 5CCV-22-0000027 ("2022 state court action").[2]  Other defendants in that action include, among others, American Savings Bank.  Second, in October 2024, the Nices filed a complaint to enjoin a purported foreclosure action brought by American Savings Bank, represented by Watanabe Ing LLP, in *Cameron E. Nice, et al. v. Watanabe Ing LLP, et al.*, 5CCV-24-0000097 ("2024 state court action").[3]  Judge Randal Valenciano presides over both pending state court actions.

---

[1]  A court may take judicial notice of matters of public record but it "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

[2]  *See also* eCourt* Kokua, https://www.courts.state.hi.us/legal_references/records/jims_system_availability [https://perma.cc/5ZP5-J7KV] (entering Case ID or Citation Number "5CCV-22-0000027").

[3]  *See also* eCourt* Kokua, https://www.courts.state.hi.us/legal_references/records/jims_system_availability [https://perma.cc/5ZP5-J7KV] (entering Case ID or Citation Number "5CCV-24-0000097").  A Name Search on eCourt* Kokua does not reveal any judicial foreclosure actions filed by American Savings Bank against the Nices; however, there appears to be collection activity as the Nices attach to their 2024 state action complaint a Watanabe Ing LLP-issued "Notice of Default, Final Demand for Payment and Notice of Acceleration of Note

(continued . . . )

On January 24, 2025, Plaintiffs filed the instant Complaint, ECF No. 1.  They name as Defendants (all in their official capacities): "Anne E. Lopez and the Office of the Hawaii Attorney General [( 'Office of the Attorney General')]"; Office of the Governor of Hawaii ("Office of the Governor"); State of Hawaii Office of the Ombudsman ("Office of the Ombudsman"); Office of the Hawaii Commission on Judicial Conduct ("Commission on Judicial Conduct"); State of Hawaii Office of the Disciplinary Counsel ("ODC"); "Heather McVay and the State of Hawaii Civil Rights Commission [('HCRC')]"; "Office of the State of Hawaii Department of Commerce and Consumer Affairs (DCCA) Division of Financial Institutions (DFI)"; "5th Circuit Court of Kauai" ("Fifth Circuit Court"); and Office of the Kauai Prosecutor . *Id*. at PageID.2–3, 7–8.  Plaintiffs allege that "State Regulatory and Enforcement Entities" committed "many Acts of Fraud and Egregious violations of [Plaintiffs'] Constitutional [and due process] Rights" under the Fifth and Fourteenth amendments, *id*. at PageID.3, 9; to wit: (1) Anne E. Lopez and Office of the Attorney General refused to investigate and prosecute Plaintiffs' claims relating to the 2022 and 2024 state court actions; (2)  Office of the Governor, in turn, refused to investigate claims and complaints against Anne E. Lopez and Office of the Attorney General; (3) Office of the Ombudsman refused to

---

and Mortgage" on a parcel of real property that is the subject of the 2022 state court action. *See* 5CCV-24-0000097, Dkt. 1.

3

prosecute Plaintiffs' claims; (4) Commission on Judicial Conduct failed to take disciplinary action against Judge Valenciano; (5) ODC refused to take disciplinary action against certain attorneys and Kauai per diem judges; (6) Heather McVay refused to accept and sign Plaintiffs' subpoena; (7) DCCA refused to support Plaintiffs' position that Anne E. Lopez was lying when she represented in a cease-and-desist letter to the Nices that DCCA has jurisdiction to regulate American Savings Bank; (8) Office of the Kauai Prosecutor failed to prosecute Plaintiffs' criminal complaints against "Private Entities";[4] and (9) "Employees of the 5th Circuit Court of Kauai" "defrauded [their] family." *Id.* at PageID.9–19.

       Plaintiffs allege that they sustained injuries in the form of "extreme financial damages, libel, defamation, disparagement, and character assassination extreme psychological, emotional, and health distress." *Id*. at PageID.5. They seek an order from this court for "all the State Regulatory and Enforcement Entities listed in this Complaint to IMMEDIATELY investigate and prosecute (and/or report) all of the Private Entities and all members of the 5th Circuit Court of Kauai . . . ." *Id*. Plaintiffs also seek compensatory damages of approximately $2,650,000, which represents the inability "to sell [their] home at the height of the

---

[4] Plaintiffs list 12 "Private Entities that are [parties] to [Plaintiffs' underlying] civil proceedings, real estate contracts, escrow contracts, and mortgage contracts that took advantage of the 5th Circuit Court's Fraud against [Plaintiffs] for their own financial gain." These purportedly include the 2022 state court action plaintiffs, American Savings Bank, and its counsel. *See* ECF No. 1 at PageID.18.

market in 2022 at [the] listed price of $1.85 Million," "home equity over $800,000.00 and growing daily by $1,500.00," and punitive damages.  *Id*.

### III.  STATUTORY SCREENING

The court must screen each civil action commenced under 28 U.S.C. § 1915(a) and order the dismissal of any complaint that is "frivolous or malicious; . . . fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (stating that § 1915(e) "not only permits but requires" the court to dismiss sua sponte an IFP complaint that fails to state a claim).  A "frivolous" case has been defined as one which is based upon an indisputably meritless legal theory, *see Anders v. California*, 386 U.S. 738, 744 (1967); *Denton v. Hernandez*, 504 U.S. 25, 33 (1992), or lacks "an arguable basis either in law or fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The critical inquiry is whether a constitutional claim, however inartfully pled, has an arguable legal and factual basis.  *See Franklin v. Murphy*, 745 F.2d 1221, 1227 (9th Cir. 1984).

Furthermore, a complaint should be dismissed for failure to state a claim if, taking all well-pleaded factual allegations as true, it does not contain "'enough facts to state a claim to relief that is plausible on its face.'"  *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 697 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Glazer Cap. Mgmt, L.P. v. Forescout Tech., Inc.*, 63 F.4th 747, 763 (9th Cir. 2023) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiffs are appearing pro se; consequently, the court liberally construes the Complaint and resolves all doubts in Plaintiffs' favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam).  The court does not, however, "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009) (citations and quotation marks omitted).  If dismissal is warranted, the court must inform Plaintiffs of the deficiencies in the Complaint and give an opportunity to cure the deficiencies if it appears possible that Plaintiffs can do so.  *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) ("Unless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.").

## IV.  DISCUSSION

A.  **Due Process Claims Under the Fifth Amendment**

At the outset, Plaintiffs' due process claims based on alleged violations of their Fifth Amendment right to due process fail as a matter of law. *See* ECF No. 1 at PageID.3.  "The Due Process Clause of the Fifth Amendment . . . [applies] only to actions of the federal government—not to those of state or local governments."  *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001); *see also Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) ("The Fifth Amendment's due process clause only applies to the federal government."); *Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States . . . .").

Plaintiffs' allegations are levied at the purported actions of state governmental entities and its officers.  *See* ECF No. 1 at PageID.13–16.  Accordingly, Plaintiffs' Fifth Amendment due process claims are DISMISSED as to all Defendants with prejudice.

B.  **Eleventh Amendment Immunity**

Likewise, "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their

7

official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation omitted); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984).  As to claims against a state itself, "[t]he Eleventh Amendment jurisdictional bar applies regardless of the nature of relief sought," absent unequivocal consent by the state.  *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010).  "Hawaii has not unequivocally waived its sovereign immunity, and Congress has not overridden that immunity for civil rights actions brought pursuant to 42 U.S.C. § 1983." *Thompson v. Paleka*, 2017 WL 5309608, at *4 (D. Haw. Nov. 13, 2017) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–67 (1989) (other citations omitted)).

And, "[a] suit against state officials in their official capacities is the same as a suit against the state itself and therefore is subject to the Eleventh Amendment."  *McNally v. Univ. of Haw.*, 780 F. Supp. 2d 1037, 1055 (D. Haw. 2011) (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985)); *see also Makanui v. Dep't of Educ.*, 6 Haw. App. 397, 406, 721 P.2d 165, 171–72 (1986) ("Hawaii, its agencies, and its officers and agents in their official capacities are immune from and cannot be held liable for claims for money damages for violation of constitutional rights under § 1983.") (citation and footnote omitted).  Thus, unless the state has unequivocally waived its sovereign immunity or Congress "exercises its power under the Fourteenth Amendment to override the immunity,

the state, its agencies, and its officials (acting in their official capacities) are immune from suit under the Eleventh Amendment." *McNally*, 780 F. Supp. 2d at 1055.

To the extent Plaintiffs' Complaint seeks money damages against the state, its agencies, and state officials acting in their official capacities, *Aholelei*, 488 F.3d at 1147, the Eleventh Amendment bars claims against Defendants Anne E. Lopez, Office of the Attorney General, Office of the Governor, Office of the Ombudsman, Commission on Judicial Conduct, ODC, Heather McVay, HCRC, DCCA, and Fifth Circuit Court.  These claims are therefore DISMISSED with prejudice.

**C.**     ***Ex parte Young***

An exception to Eleventh Amendment immunity is the doctrine of *Ex parte Young*—a plaintiff may maintain a suit for prospective injunctive relief against a state official in his or her official capacity when that suit seeks to correct an ongoing violation of the Constitution or federal law. *Ex parte Young*, 209 U.S. 123, 159–60 (1908).  Under *Ex parte Young*, a claim seeking declaratory and/or injunctive relief can only be brought against a state official in that person's official capacity, not a State or its agencies. *See, e.g.*, *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir.), *opinion amended on denial of reh'g*, 312 F.3d 416

(9th Cir. 2002) (holding "two state agencies [were] immune from suit because they are state entities, not individual state officers").

A plaintiff can only seek prospective relief under *Ex parte Young* for an ongoing violation of the United States Constitution or federal law; it does not apply retrospectively to past violations. *See, e.g.*, *Cardenas v. Anzai*, 311 F.3d 929, 935 (9th Cir. 2002). That is, "[i]n determining whether [*Ex parte Young*] avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether (the) complaint alleges an ongoing violation of federal law and seeks relief property characterized as prospective." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (some alterations in original) (internal quotation marks omitted). And to be clear, *Ex parte Young* does not apply, and cannot be invoked, based on allegations of ongoing violations of *state* law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.").

Further, courts have held that issuing an injunction under *Ex parte Young* is generally impermissible where it would control a state official's exercise of a discretionary function. *See Ex parte Young*, 209 U.S. at 158 ("There is no

doubt that the court cannot control the exercise of the discretion of an officer. It can only direct affirmative action where the officer having some duty to perform not involving discretion, but merely ministerial in its nature, refuses or neglects to take such action."); *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 241 (5th Cir. 2020) ("[T]he present [*Ex parte Young*] injunction is impermissible because it would control the Secretary in her exercise of discretion."); *Seminole Tribe of Florida v. State of Fl*orida, 11 F.3d 1016, 1028 (11th Cir. 1994) ("The *Ex parte Young* doctrine cannot compel discretionary acts."), *aff'd*, 517 U.S. 44 (1996); *Elephant Butte Irr. Dist. of New Mexico v. Dep't of Interior*, 160 F.3d 602, 611 (10th Cir. 1998) (stating that *Ex Parte Young* does not permit courts to interfere with discretionary acts unless the exercise of discretion violates federal law).

      Here, plaintiffs have failed to show that the alleged failure to investigate by various state agencies violated their federal constitutional or statutory rights. And the court is aware of no doctrine that requires—by constitutional or statutory decree—a state agency to investigate claims of fraud as requested by Plaintiffs. And to the extent Plaintiffs claim some violation of the State of Hawaii constitution or laws, this court has no authority to provide the relief they seek. Thus, any claims under *Ex parte Young* against Anne E. Lopez or Heather McVay (the two state agency heads sued in their official capacities) are DISMISSED.

**D.      Due Process Claims Under the Fourteenth Amendment**

Plaintiffs also seek monetary damages and injunctive relief against Office of the Kauai Prosecutor for claimed violations of due process under the Fourteenth Amendment.  *See* ECF No. 1 at PageID.3.  Specifically, Plaintiffs bring a § 1983 claim against Office of the Kauai Prosecutor, alleging that they "filed Criminal Complaints . . . against all of these Private Entities with the Kauai Police Department . . . but Kauai Prosecutor Rebecca Like is just sitting on these criminal complaints because if she investigates these complaints, it will incriminate numerous Kauai Judges and Per Diem Judges." *Id*. at PageID.14.  These claims fail.

Section 1983 provides a cause of action by one who has been deprived of constitutional rights by another person acting under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  A defendant has acted under color of state law where that defendant has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S.

299, 326 (1941)); *see also Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1209 (9th Cir. 2002) ("Whether a private party engaged in state action is a highly factual question.").

"[T]he "Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 196 (1989). Furthermore, "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 768 (2005). Plaintiffs do not "have a protected liberty or property interest in the prosecutor's charging decisions" as such decisions "involve the prosecutor's discretionary judgment and independence, which are protected from interference." *Roe v. Lynch*, 997 F.3d 80, 85 (1st Cir. 2021). Moreover, there is no cause of action under § 1983 for the failure to investigate or prosecute a crime, as an individual has no federal constitutional right to have criminal wrongdoers brought to justice. *See Leeke v. Timmerman*, 454 U.S. 83, 87 (1981) ("[T]he decision to prosecute is solely within the discretion of the prosecutor."); *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) (noting that "a private citizen lacks a judicially cognizable interest in the prosecution or

nonprosecution of another"); *Saldivar v. Riverside Police Dep't*, 2020 WL 4938356, at *5 (C.D. Cal. May 26, 2020) ("[B]ecause Plaintiff lacks a cognizable interest in the nonprosecution of others, he cannot base a Section 1983 claim on the District Attorney's failure to prosecute."); *Ruggiero v. Jones*, 2024 WL 5202573, at *8 (S.D.N.Y. Dec. 23, 2024) (concluding that allegations of failure to "initiate the process to criminally charge" and failure to "conduct[] an investigation" do not state a cognizable claim) (brackets in original); *Prince v. District of Columbia*, 2024 WL 2077546, at *4 (D.D.C. May 9, 2024) (collecting cases); *Doe v. New Hampshire Dep't of Corr. Comm'r*, 2022 WL 20478432, at *1 (D.N.H. Nov. 22, 2022), *report and recommendation adopted sub nom. Doe v. NH Dep't of Corr., Commr*, 2023 WL 5041812 (D.N.H. Aug. 8, 2023) ("There is no cause of action under § 1983 for the failure to investigate or prosecute a crime, as an individual has no federal constitutional right to have criminal wrongdoers brought to justice.").

Also, "a prosecutor is entitled to absolute immunity from the decision not to prosecute." *Roe v. City & County of San Francisco*, 109 F.3d 578, 583 (9th Cir. 1997). And although this principle generally only applies to a claim for damages, permitting "injunctive relief in this setting would do violence to

prosecutorial independence even more directly than would the prospect of a damage action." *Harrington v. Almy*, 977 F.2d 37, 41 (1st Cir. 1992).[5]

Plaintiffs fail to allege any protected interest in the Office of the Kauai Prosecutor's charging decision, and, in any event, the Office of the Kauai Prosecutor is immune from both damages and injunctive relief. This claim is thus DISMISSED.

### E. Judicial Immunity

Plaintiffs allege that "Employees of the 5th Circuit Court of Kauai" are liable for forged documents and "Fraudulent procedural legal directive[s]." ECF No. 1 at PageID.16–17. Plaintiffs name as "employees" Fifth Circuit Court Judges Randal Valenciano and Kathleen Watanabe, and others affiliated with the Fifth Circuit Court, including several per diem judges and the Legal Documents Section. *Id*. at PageID.17.

Judges are absolutely immune from liability for damages based on acts performed in their official capacities. *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc). This judicial immunity applies no matter how "erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Id*. (quoting *Cleavinger v. Saxner*, 474 U.S. 193,

---

[5] This rule would not apply, for instance, where a charging decision "turns on suspect class distinctions" which would implicate separate constitutional concerns. *Harrington*, 977 F.2d at 41. But, here, Plaintiffs allege no separate constitutional concerns.

15

199–200 (1985)). Judicial immunity is not affected "by the motives with which [judges'] judicial acts are performed." *Id*. at 1078. The public policy that underlies judicial immunity is the furtherance of independent and disinterested judicial decision making. *Id*. at 1078. To effectuate this policy, the Ninth Circuit broadly construes the scope of judicial immunity, which applies even if there are allegations that a judicial decision resulted from a bribe or a conspiracy. *Id*.; *see also Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("This immunity applies even when the judge is accused of acting maliciously and corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.") (internal quotation marks omitted).

Further, judicial immunity "is not limited to immunity from damages, but extends to actions for declaratory, injunctive and other equitable relief." *Moore v. Brewster*, 96 F.3d 1240, 1243 (9th Cir. 1996), *superseded by statute on other grounds*. Nevertheless, there is no immunity if a judge acts in the clear absence of all jurisdiction or performs an act that is not judicial in nature. *Ashelman*, 793 F.2d at 1075. An act is judicial in nature if, among other factors, it is a function normally performed by a judge. *Id*.; *see also In re Complaint of Judicial Misconduct*, 366 F.3d 963, 965 (9th Cir. 2004) (listing factors to consider when

16

determining whether an act is judicial in nature). Here, the allegations are centered against State of Hawaii judges acting in a judicial capacity only.

In addition, claims against unnamed court employees acting in concert with judges are similarly barred by the doctrine of absolute quasi-judicial immunity. *See Moore*, 96 F.3d at 1244 (applying absolute judicial immunity to certain court employees "who perform functions closely associated with the judicial process"); *Mullis v. United States Bankr. Ct. for the Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987) (explaining that court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process); *Sharma v. Stevas*, 790 F.2d 1486, 1486 (9th Cir. 1986) ("The defendant Clerk of the United States Supreme Court has absolute quasi-judicial immunity because his challenged activities were an integral part of the judicial process.").

Similarly, as to Plaintiffs' claim against Kauai per diem judges, to the extent their actions relate to the 2022 and 2024 state court actions, judicial immunity would bar such a claim. And Plaintiffs fail to describe in what capacity certain attorneys served in the 2022 and 2024 state court actions or the present case (whether as attorneys or per diem judges).[6] Accordingly, Plaintiffs' claims against

---

[6] Plaintiffs provide no basis to characterize attorneys Chun, Goldberg, and Scarbo as Fifth Circuit Court "employees." *See* ECF No. 1 at PageID.17. Plaintiffs appear to confuse their
(continued . . .)

17

the Fifth Circuit Court of Kauai—including any claims that Plaintiffs may have intended to bring against state judges or court employees—are DISMISSED.

## V. CONCLUSION

(1) Plaintiffs' Fifth Amendment Due Process claims are DISMISSED with prejudice against all Defendants;

(2) Plaintiffs' claims for money damages against the State of Hawaii, its agencies, and state officials acting in their official capacities are DISMISSED with prejudice.

(3) Although it appears to the court that providing Plaintiffs leave to amend their Complaint would be futile, given Plaintiffs' pro se status, the court will give Plaintiffs leave to file a memorandum, consisting of no more than ten

---

roles as per diem judges with being counsel to parties in the underlying state court actions. *See, e.g.*, *id*. at PageID.15 (alleging "since these Kauai Attorneys are also Kauai Per Diem Judges and Officers of the Court[,] it's mandatory that they simultaneously abide by both the Hawaii Rules of Professional Conduct and the Hawaii Revised Code of Judicial Conduct while acting as attorneys in a court of law").

To the extent Plaintiffs assert a § 1983 claim against them as per diem judges, it is without merit. Most importantly, Plaintiffs point to no right secured by the Constitution or laws of the United States that was violated. And, in any event, the Plaintiffs' underlying premise appears to be incorrect. In the State of Hawaii, "[p]er diem district judges may engage in the private practice of law during their term of service . . . ." Haw. Rev. Stat. § 604-2(b); *see also Application of Ferguson*, 74 Haw. 394, 846 P.2d 894 (1993) (holding that statute authorizing per diem judges to practice law did not violate State of Hawaii constitutional prohibition against full time judges practicing law during their terms of office). Furthermore, Plaintiffs' reliance on the Commission on Judicial Conduct's Advisory Opinion #03-96 is misplaced. *See* ECF No. 1 at PageID.15. Advisory Opinion #03-96 concluded that per diem district judges, as well as lawyers in their law firm, cannot practice as lawyers in the *district* courts within the circuit in which the per diem judge sits. *See* https://www.courts.state.hi.us/wp-content/uploads/2016/09/fao0396_103096.pdf [https://perma.cc/JG2R-KLQ8]. Here, it appears that attorneys Chun, Goldberg, and Scarbo are acting as counsel in either or both the 2022 and 2024 state court actions (in Hawaii *circuit* court), and not in any *district* court action involving the Nices.

18

pages, explaining how Plaintiffs could amend their Complaint to state a claim consistent with this Order.  That memorandum must be filed by March 24, 2025.  Thereafter, the court will review the memorandum to determine whether to allow Plaintiffs to file an Amended Complaint.  Failure to file the memorandum by March 24, 2025, will result in dismissal of the action.

        IT IS SO ORDERED.

        DATED:  Honolulu, Hawaii, March 3, 2025.



        /s/ J. Michael Seabright
        J. Michael Seabright
        United States District Judge